UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No.: 2:23-cr-00105-GMN-EJY-1 |
| Plaintiff, ) | |
| vs. ) | **ORDER DENYING THE** |
| ) | **GOVERNMENT'S MOTION FOR** |
| NATHAN THOMAS FOREMAN, ) | **RECONSIDERATION** |
| ) | |
| Defendant. ) | |

Pending before the Court is the Government's Motion for Reconsideration, (ECF No. 36), of the Magistrate Judge's Order, (ECF No. 34), granting Defendant Nathan Thomas Foreman's Motion to Compel Reasonable Examination of Cell Phone, (ECF No. 25). Defendant filed a Response, (ECF No. 38), to which the Government filed a Reply, (ECF No. 39).

For the reasons discussed below, the Court **DENIES** the Government's Motion for Reconsideration.

I. **BACKGROUND**

Defendant is charged with one count of Coercion and Enticement under 18 U.S.C. § 2422(b) and one count of Possession of Child Pornography under 18 U.S.C. § 2252(a)(5)(B) and 2252A(b)(2). (Indictment, ECF No. 1). The Indictment alleges that Defendant's cell phone contained child sex abuse material ("CSAM") and evidence underlying the coercion charge. (*Id.*). As a result, Defendant retained Arthur Hively, a digital forensic expert, to review the cellphone. (*See generally* Mot. Compel, ECF No. 25).

The parties coordinated to establish the terms of Hively's review of the cellphone. (*Id.* 4:3–20). Because the cellphone contains CSAM, review of the device is governed by the Adam

Walsh Child Protection and Safety Act under 18 U.S.C. § 3509.  After discussion on the terms of Hively's review, the parties reached an impasse. (*Id.* 4:18–5:20).  According to the Government, the Act required Hively to use a government computer instead of his personal computer and required the FBI to review any computer used by Hively to determine if he was removing CSAM from the FBI facility. (Mot. Reconsideration 3:11–4:2, ECF No. 36).

Defendant then filed a Motion to Compel, arguing that the Government's proposed terms restricted Hively's examination and risked the potential disclosure of Hively's work product and defense strategies. (*See generally* Mot. Compel).  After briefing on the Motion, the Magistrate Judge held a hearing, and ordered that Hively be allowed to bring his own equipment and certify by way of affidavit that he did not remove any CSAM from the facility. (Mins. Proceeding, ECF No. 35).  The Magistrate Judge found that the FBI's review of Hively's computer and Hively's use of a government computer risked disclosure of Hively's confidential work product and defense strategy. (Mot. Hr.'g Tr. 5:2–18, 12:25–13:5, Ex. A to Resp., ECF No. 38-1).  The Government then filed its Motion for Reconsideration.

## II. <u>LEGAL STANDARD</u>

### A. Motion to Reconsider a Magistrate Judge's Final Determination

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Crim. P. 72(a); D. Nev. LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3, where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law.").

"A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ressam*, 629 F.3d 793, 825 (9th Cir. 2010) (quotation omitted).  "An order is contrary to law when it fails to apply or misapplies relevant

1  statutes, case law or rules of procedure." *Calderon v. Experian Info. Solutions, Inc.*, 290 F.R.D. 508, 511 (D. Idaho 2013). A magistrate judge's pretrial order issued under 28 U.S.C. § 636(b)(1)(A) is not subject to *de novo* review, and the reviewing court "may not simply substitute its judgment for that of the deciding court." *Grimes v. Cty. & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

### B. Adam Walsh Child Protection & Safety Act, 18 U.S.C. § 3509(m)

The Adam Walsh Act governs the discovery and inspection of child pornography in criminal cases. 18 U.S.C. § 3509; *United States v. Wright*, 625 F.3d 583, 614 (9th Cir. 2010), *superseded by statute on other grounds in United States v. Brown*, 785 F.3d 1337, 1351 (9th Cir. 2015). Under this Act, "'a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography . . . so long as the Government makes the property or material reasonably available to the defendant.'" *Wright*, 625 F.3d at 614 (quoting 18 U.S.C. § 3509(m)(2)(A)). The evidence is "reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." 18 U.S.C. § 3509(m)(2)(B).

The Act does not define "ample opportunity," and the Ninth Circuit has not define[d] the exact parameters of what it means to give a defendant 'ample opportunity.'" *Wright*, 625 F.3d at 616–17. The most comprehensive definition of "ample opportunity" comes from the United States District Court for the Eastern District of California in *United States v. Flinn*, 521 F. Supp. 2d 1097 (E.D. Cal. 2007). The *Flinn* court explained that an ample opportunity to examine seized computer items means,

> an examination whereby the government can supply reasonably up-to-date tools (hardware and software) and facilities such that a defendant can construct a reasonable, available forensic defense, if one is available at all, and whereby the analysis will not be impeached because it was not supported by the proper hardware

or software. An ample opportunity will permit a defense expert to utilize his or her hardware or software. An ample opportunity also requires that the analysis be performed in a situation where attorney-client privilege and work product will not be easily, accidentally exposed to the government, and in a facility which is open to the defense at its request during normal working hours, and to the extent feasible, during non-working hours.

*Id.* at 1101.  In determining what constitutes an "ample opportunity," courts should bear in mind the Act's purpose of "'ensur[ing] that the child pornography used in criminal trials does not escape into the public domain.'" *United States v. Mitchell*, 128 F. Supp. 3d 1266, 1272 (E.D. Cal. 2015) (quoting *United States v. Johnson*, 456 F. Supp. 2d 1016, 1019 (N.D. Iowa 2006)).

### III.     DISCUSSION

The Government's Motion contends the Magistrate Judge erred in two respects. (Mot. Reconsider 6:8–10:13).  First, the Government advances that the Magistrate Judge erred in allowing Hively to use his personal computer. (*Id.* 9:8–9:19).  According to the Government, Hively will not be deprived of an ample opportunity by using a government computer and equipment. (*Id.*).  Second, the Government argues that the Magistrate Judge erred in permitting Hively to certify by affidavit that he did not remove CSAM from the Government facility. (*Id.* 9:20–10:13).  To prevent the potential dissemination of child pornography, the FBI should be permitted to search Hively's computer to ensure no CSAM was removed. (*Id.*).

The Government's arguments, while well-taken, are insufficient.  The conditions posed by the Magistrate Judge are consistent with those imposed by other courts, and even if the undersigned disagreed with the Magistrate Judge, it is not the role of this Court to substitute its judgment for that of the Magistrate Judge under this standard of review.

///

///

///

### A. Hively's Personal Computer Use

The Government advances that several FBI facilities have procedures which "do not permit the use of personal devices and require that the defense expert use an FBI supplied computer." (Mot. Reconsider 8:12–14). Contrary to these policies, the Magistrate Judge allowed Hively to use his own computer, a decision the Government argues wrongfully places "full care, custody, and control over CSAM" in his hands. (Reply 4:23–24, ECF No. 39).

Logistical or procedural inconveniences do not render evidence unavailable or deprive a defendant's expert of an ample opportunity to view, examine, or inspect the material. *See United States v. Mitchell*, 725 Fed. App'x 544, 546 (9th Cir. 2018). For example, in *Mitchell*, the Ninth Circuit held that "budget, timing, and staffing problems" did not deprive a defendant of an "ample opportunity" to examine evidence. *Id.*; *see also United States v. O'Rourke*, 470 F. Supp. 2d 1049, 1057–61 (D. Ariz. 2007) (finding that the defendant was provided ample opportunity despite costs and difficulty arising from experts having to travel from Ohio to Arizona to inspect hard drive). This is because a defendant is only "entitled to a defense which comports with due process" and not "the 'best defense money can buy.'" *United States v. Mitchell*, 128 F. Supp. 3d 1266, 1275 (E.D. Cal. 2015) (quoting *Flinn*, 521 F. Supp. at 1102).

In contrast, conditions which raise substantive concerns, which can include proposed conditions that threaten disclosure of a defendant's strategy or privileged information, may show a defendant was deprived an ample opportunity to conduct an examination of the material. *See Wright*, 625 F.3d at 617 (explaining that the defendant had an "ample opportunity" to examine child-pornography evidence where he made no "claim that the parties' arrangement threatened to disrupt the attorney-client relationship or that the defense team's work product was compromised in any way"); *Flinn*, 521 F. Supp. 2d at 1101 ("An ample opportunity also requires that the analysis be performed in a situation where attorney-client privilege and work product will not be easily, accidently exposed to the government . . . .").

The Magistrate Judge found that Hively's personal computer use fell into the latter category. Specifically, she explained that the requirement Hively use a government computer risked disclosure of Hively's work product and Defendant's trial strategy. (Mot. Hr.'g Tr. 5:2–18, 12:25–13:5, Ex. A to Resp.). The Government does not rebut this finding, but instead argues that the Magistrate Judge's condition is impermissible because it is contrary to procedures implemented by several FBI field offices and the purpose of the Act. (Mot. Reconsideration 6:7–8:22). The Court, guided by the principle that it "may not simply substitute its judgment" for that of the Magistrate Judge, finds her Order was not clearly erroneous or contrary to law for two reasons. *See Grimes*, 951 F.2d at 241.

First, this Court is not bound by the individual policies of the FBI field offices. Therefore, the inclusion of policies by the Government warrants consideration but is in no way dispositive. And here, the persuasive value of the policies offered by the Government is lessened by the fact that it includes the procedures of only 8 of the FBI's 56 total field offices. (Resp. 10:16–11:8). Without inclusion of the remaining 48 field offices, the Court is left to speculate whether the FBI field offices are uniform in their interpretation and application of the Act. Indeed, a more compelling argument would exist if all 56 field offices did not permit an expert to use their own computer. But even among the select sampling provided by the Government, the FBI field offices diverge over whether an expert is allowed to use their own computer. According to the Government, the FBI field office in Washington D.C. and California permit an expert to use their own computer. (Mot. Reconsideration 8:15–22). So at most, these policies show the Magistrate Judge's Order is in harmony with at least some FBI field offices even if violative of others.

Second, case law on this issue does not establish the Magistrate Judge's condition is clearly erroneous or contrary to law. The *Flinn* court explicitly stated that an ample opportunity "permit[s] a defense expert to utilize his or her hardware or software." *Flinn*, 521

F. Supp. at 1101. Other courts have noted that the government stipulated to or agreed to a defendant's experts' use of their own computer and software. *See Wright*, 625 F.3d at 615 (noting the parties' protective order allowed for the defense expert to set up his own equipment and "leave his computer and the hard drive running overnight" at the United States Attorney's Office); *United States v. Busby*, No. 11-cr-00188, 2012 WL 5077144, at *2 (N.D. Cal. Oct. 18, 2012) (protective order); *United States v. Mayer*, No. 19-cr-006, 2020 WL 814187, at *4 (D. Minn. Feb. 19, 2020) (protective order); *United States v. Gaynor*, No. 3:06-cr-86, 2008 WL 113653, at *3 (D. Conn. Jan. 4, 2008) (offer). The Government failed to identify cases in which a court found that "ample opportunity" did not include allowance for an expert to use their own computer, nor did it cite cases demonstrating that the allowance would contravene the purpose of the Act. In short, neither FBI field office policy or caselaw on this issue demonstrates the Magistrate Judge's Order was clearly erroneous or contrary to law. Accordingly, the Government's Motion is DENIED on this basis.

### B. FBI Review of Defense Expert's Personal Computer Versus Expert's Certification by Affidavit

Next, the Government argues that the Magistrate Judge erred in permitting Hively to certify by affidavit that he did not remove CSAM from the Government facility. (Mot. Reconsider 9:20–10:13). According to the Government, this condition violated the Act by shifting "care, custody, and control" of the CSAM "from the Court and the [G]overnment to [Hively]." (*Id.* 9:5–7). Instead, the Government advances that the FBI should be permitted to conduct an independent review of the expert's equipment before they exit the facility. (*Id.*).

No circuit court has examined this exact issue. But several district courts, both within and outside the Ninth Circuit, have permitted a defendant's expert to certify in writing that they did not take any child pornography materials or cause them to be sent off-site. *See, e.g., United States v. Tummins*, No. 3:10-cr-00009, 2011 WL 2078107, at *7 (M.D. Tenn. May 26, 2011);

*United States v. Bortnick*, 2010 WL 935842, at *3 (D. Kan. Mar. 11, 2010); *United States v. Harvey*, No. 3:07-cr-00103, 2008 WL 11395584, at *10 (D. Alaska Jan. 7, 2008); *United States v. Wiedower*, No. 4:07-cr-00316, 2008 WL 11350176, at *2 (E.D. Ark. Nov. 17, 2008); *Flinn*, 521 F. Supp. 2d at 1103.  For example, a District of Kansas court in *Bortnick* explained that a "hard drive is not reasonably available so long as defendant's expert is subject to search of his electronic materials each time he leaves the facility." *Bortnick*, 2010 WL 935842, at *3.

        The Executive Office for United States Attorneys ("EOUSA") also discussed this issue in a publication on sexual exploitation crimes against children. *See* Paul R. Almanza, Deputy Chief, Child Exploitation and Obscenity Section, Executive Office of the United States Attorneys, *Exploitation Crimes Against Children* (Sept. 2011), last visited on May 15, 2024, https://www.justice.gov/sites/default/files/usao/legacy/2011/09/08/usab5905.pdf.
The publication recommended that "[a]s an additional (albeit imperfect) security measure, government agents can, prior to departure, scan defense experts' electronic equipment to ascertain whether any contraband materials have been copied onto such equipment."  It then noted, however, that "some courts . . . view this type of precaution as an unreasonable restriction on the defendant's ability to prepare a defense." *Id.* (citing *Bortnick*, 2010 WL 935482, at *2).

        The Magistrate Judge's condition is neither clearly erroneous nor contrary to law.  The courts which have addressed this issue have recognized, either impliedly or explicitly, that permitting a defendant's expert to certify in writing that they did not remove child pornography materials did not contravene the Act by shifting care, custody, and control of the child sex abuse material to the defendant's expert.  Moreover, the EOUSA publication noted that some courts have viewed the Government's exact argument with skepticism.  "It bears repeating that the undersigned 'may not simply substitute' her judgment for that of the Magistrate Judge." *Gypsum Resources, LLC v. Clark Cnty.*, No. 2:19-cv-00850, 2023 WL 7351967, at *3 (D. Nev.

Sept. 29, 2023) (quoting *Grimes*, 951 F.2d at 241). Because this condition is consistent with the weight of authority that has considered the issue, the Court finds that the Magistrate Judge properly applied the law to the facts of this case.

In sum, the Court finds the conditions imposed by the Magistrate Judge are neither clearly erroneous nor contrary to law. Accordingly, the Court DENIES the Government's Motion for Reconsideration.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that the Government's Motion for Reconsideration, (ECF No. 36), is **DENIED**.

**DATED** this __20__ day of May, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court